IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

KIMBERLY I. GASPER and
ANDY FOSTER, husband,

       Plaintiffs,

v.                                              CIVIL ACTION NO. 1:20cv212
                                                                (KLEEH)

SWICK & SON MAINTENANCE SPECIALISTS,
INC., individually doing business as
Chesapeake Mechanical & Coatings,
CONWAY-PHILLIPS HOLDINGS, LLC, PROCESS
COMBUSTION CORPORATION, WEYERHAEUSER
COMPANY, WEYERHAEUSER NR COMPANY,
CHRIS CORDER, JOHN DOES 1-5, and XYZ
CORPORATIONS 1-5,

       Defendants.

MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [ECF NO. 15]

Pending before the Court is a Motion to Remand filed by Plaintiffs Kimberly I. Gasper and Andy Foster. ECF No. 15. Plaintiffs filed the Motion to Remand pursuant to 28 U.S.C. §§ 1441 and 1446 and move to remand the instant action to the Circuit Court of Harrison County, West Virginia, alleging that Defendants have failed to satisfy its burden of proving the diversity jurisdiction requirement under 28 U.S.C. § 1441. Defendant Swick & Son Maintenance Specialists, Inc., d/b/a Chesapeake Mechanical & Coatings ("Chesapeake") filed a Notice of Removal to remove the matter from the Circuit Court of Harrison County, West Virginia, to the United States District Court for the Northern District of West Virginia alleging against Plaintiffs fraudulent joinder of

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 15]**

the individual defendant, Chris Corder. For the reasons discussed herein, the Motion to Remand is **GRANTED.** [ECF No. 15].


## I.    PROCEDURAL HISTORY

Plaintiffs Kimberly I. Gasper and Andy Foster ("Plaintiffs") filed a Complaint in the Circuit Court of Harrison County, West Virginia, on June 26, 2020. ECF No. 1-1. Plaintiffs' Complaint was served on Defendant Chris Corder on June 27, 2020, by certified mail. ECF No. 1-1. Plaintiff's Complaint was served on Defendant Swick & Son Maintenance Specialist, Inc., individually doing business as Chesapeake Mechanical & Coatings, on July 31, 2020, by certified mail. ECF No. 1-3. The West Virginia Secretary of State effectuated service of Plaintiffs' Complaint on Defendants Weyerhaeuser Company, Process Combustion Corporation, Conway-Phillips Holdings, LLC, and Weyerhaeuser NR Company on August 3, 2020. Id. Defendant Chris Corder moved to dismiss the action pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure on July 28, 2020. ECF No. 1-2. Chesapeake timely filed the Notice of Removal pursuant to 28 U.S.C. § 1446(b)(2)(B) on August 25, 2020. ECF No. 1.


## II.   GOVERNING LAW

When an action is removed from state court, the district court must determine whether it has original jurisdiction over the

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 15]**

plaintiff's claims. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree[.]" Id. (citations omitted). "Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994) (citation omitted).

Federal courts have original jurisdiction over two types of cases: those involving federal questions under 28 U.S.C. § 1331 and those involving diversity of citizenship under 28 U.S.C. § 1332. When a party seeks to remove a case based on diversity of citizenship, that party bears the burden of establishing that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states[.]" 28 U.S.C. § 1332. Generally, § 1332 requires complete diversity among parties, which means that the citizenship of all defendants must be different from the citizenship of all plaintiffs. See Caterpillar, Inc. v. Lewis, 519 U.S. 61, 68 (1996). For purposes of diversity of citizenship jurisdiction under 28 U.S.C. § 1332, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 15]**

It is required that an action "be fit for federal adjudication at the time the removal petition is filed." See 28 U.S.C. § 1441(a); Moffitt v. Residential Funding Co., LLC, 604 F.3d 156, 159 (4th Cir. 2010) (quoting Caterpillar Inc., 519 U.S. at 73). If the complaint does not contain a specific amount in controversy and the defendant files a notice of removal, "the defendant bears the burden of proving that the claim meets the requisite jurisdictional amount," and "the court may consider the entire record" to determine whether that burden is met. Elliott v. Tractor Supply Co., No. 5:14CV88, 2014 WL 4187691, at *2 (N.D.W. Va. Aug. 21, 2014) (citation omitted). If the defendant sufficiently proves by a preponderance of the evidence that the amount in controversy exceeds $75,000 and the parties are diverse, then removal is proper. Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87-88 (2014). "[A]bsent a binding stipulation signed by [the plaintiff] that he will neither seek nor accept damages in excess of $75,000, the Court must independently assess whether the defendants [have] proven by a preponderance of the evidence that [the plaintiff's] complaint seeks damages in excess of $75,000." Virden v. Altria Group, Inc., 304 F.Supp.2d 832, 947 (N.D.W. Va. 2004). Where diversity jurisdiction is doubtful, remand is required. Maryland Stadium Authority v. Ellerbe Becket Incorporated, 407 F.3d 225, 260 (4th Cir. 2005).

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 15]**

Plaintiffs, as masters of the Complaint, determine who to sue and for what to sue the chosen Defendants.  See Lincoln Property Co. v. Roche, 546 U.S. 81, 91 (2005) ("In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder [of] necessary parties.") (quoting 16 J. Moore et al., Moore's Federal Practice § 107.14[2][c], p. 107–67 (3d ed. 2005)).

Complete diversity exists between the parties when "no party shares common citizenship with any party on the other side." Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). The fraudulent joinder doctrine is an exception to the complete diversity requirement, in that it "permits removal when a non-diverse party is (or has been) a defendant in the case." Id. In essence, a defendant may remove a case on the basis of diversity jurisdiction even if a non-diverse defendant is a party to the case, so long as the removing party can prove that the non-diverse defendant was fraudulently joined, by demonstrating either (1) "outright fraud in the plaintiff's pleading of jurisdictional facts" or (2) that "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (internal citation omitted) (emphasis omitted). Fraudulent joinder "effectively permits a district court to disregard, for

jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Mayes, 198 F.3d at 461 (internal citation omitted).

In the United States Court of Appeals for the Fourth Circuit, "fraudulent joinder claims are subject to a rather black-and-white analysis [and] [a]ny shades of grey are resolved in favor of remand." Hartman v. Caraco Pharmaceutical Laboratories, Ltd., 789 F.Supp.2d 701, 703 (S.D.W. Va. 2011). A removing defendant bears a heavy burden of establishing that the non-diverse defendant has been fraudulently joined. Mayes, 198 F.3d at 464. Under the "no possibility" standard, a removing defendant cannot succeed if there is a "glimmer of hope" that plaintiff's claim against a non-diverse defendant will succeed. Id. at 466.

### III. THE COMPLAINT

**A. The Parties**

Plaintiffs Kimberly I. Gasper and Andy Foster, wife and husband, are residents and citizens of Pearl River County, Mississippi. Compl., ECF No. 1-1, ¶ 1. Defendant Chesapeake, a corporation duly organized and existing under the laws of the state of Maryland, with a principal place of business in the state of Maryland, is qualified to do and is doing business in the State of West Virginia. Id. at ¶ 2, ECF No. 1, ¶ 16(b). Defendant Conway-

6

Phillips Holding, LLC, ("Conway-Phillips"), is a limited liability company organized and existing under the laws of the State of West Virginia; however, a limited liability company is considered a citizen of every jurisdiction of which any member is a citizen. Compl., ECF No. 1-1, ¶ 3, Central W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011). Because the sole member of Conway-Phillips is an individual who is a resident of the state of Pennsylvania, Conway-Phillips is a citizen of the state of Pennsylvania. ECF No. 1, ¶ 16(c)-(e). Defendant Process Combustion Corporation ("Process Combustion"), is a legally organized corporation and existing under the laws of the state of Pennsylvania, has done business in the state of West Virginia, and is therefore subject to jurisdiction pursuant to W. Va. Code § 31D-15-1510. Compl., ECF No. 1-1, ¶ 4. Defendant Weyerhaeuser Company ("Weyerhaeuser") is a legally organized foreign corporation with residency in the state of Washington, and doing business throughout the state of West Virginia, and within the county of Harrison. Id. at ¶ 5, ECF No. 1, ¶ 16(g). Defendant Weyerhaeuser NR Company ("Weyerhaeuser NR"), a wholly owned subsidiary of Defendant Weyerhaeuser, is a legally organized foreign corporation doing business throughout the state of West Virginia, and within the county of Harrison. Compl., ECF No. 1-1, ¶¶ 6-7. Defendant Chris Corder ("Defendant Corder") is a resident and citizen of Upshur County, West Virginia, and was an employee,

representative, or agent of Defendants Weyerhaeuser and Weyerhaeuser NR (collectively "Weyerhaeuser defendants"). Compl., ECF No. 1-1, ¶¶ 8-9.

Plaintiffs allege that jurisdiction and venue are appropriate in the Circuit Court of Harrison County, West Virginia, because certain defendants, including the Weyerhaeuser defendants, while not citizens of the state, conduct business in Harrison County, and Defendant Corder is a citizen and resident of West Virginia. Id. at ¶ 13.

### B. The Factual Allegations

Plaintiffs allege that on June 30, 2018, Plaintiff Kimberly I. Gasper, ("Plaintiff Gasper"), an employee of Southern Erectors, Inc., was injured while working at a Weyerhaeuser plant in Braxton County, West Virginia. Id. at ¶¶ 16-17. Southern Erectors, Inc., ("Southern Erectors"), a non-party to this action, had been hired "to sandblast/paint a large tank located in the plant." Id. at ¶ 17. Defendants had also been hired to perform work at the plant. Id. at ¶ 18.

Plaintiff Gasper was working as a safety technician and in completing various job tasks, had placed "a red (danger) barricade around the area where work was to be performed by Southern Erectors." Id. at ¶ 19. On June 30, 2018, Plaintiff Gasper tripped and fell onto a concrete floor, landing on her hands and knees, after attempting to step over "the duct tubing and wires left by

one or more of the Defendants." Id. at ¶ 25. In the area where Plaintiff Gasper fell, one or more of the Defendants named in this action had performed work and left "collapsible duct tubing, cords, wires, and other debris scattered over the floor." Id. at ¶ 20. In the ducting were small looped wires used to hang the ducting, and such wires posed a tripping hazard to anyone stepping over the ducts to enter the work area. Id. at ¶¶ 21-25.

Plaintiffs argue that Plaintiff Gasper was injured due to the Defendants' negligence in failing to remove the duct tubing, cords, wires, and other debris from the area where Plaintiff Gasper was performing work, and also in failing to warn Plaintiff Gasper of the hazard. Id. at ¶¶ 30-34. Plaintiffs argue vicarious liability against the Weyerhaeuser defendants for the actions and omissions of its employees, including Defendant Corder, by way of the doctrine of *respondeat superior*. Id. at ¶ 39.

In the Complaint, Plaintiffs assert the following causes of action.

> (I)   Negligence – Defendants Swick & Son Maintenance Specialists, Inc d/b/a Chesapeake Mechanical & Coatings; Conway-Phillips Holding, LLC, Process Combustion Corporation; John Does 1-5, and XYZ Corporations 1-5,
>
> (II)  Negligence  –  Defendants  Weyerhaeuser, Weyerhaeuser NR, and Corder, and

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 15]**

(III)   Loss of Consortium – All Defendants.

Plaintiffs argue damages due to the alleged injuries. Specifically, Plaintiffs request past medical expenses for Plaintiff Gasper's injuries, totaling $60,391.00, and future medical expenses in an amount presently indeterminable. Id. at ¶ 61. Plaintiffs further request the loss of past and future wages. Id. at ¶ 62. Plaintiffs request money damages to compensate for Plaintiff Gasper's past, present, and future pain and suffering, Plaintiff Andy Foster's loss of consortium, and interest, costs, and other expenses incurred by the Plaintiffs. Id. at ¶¶ a-f.

### IV.   DISCUSSION

The Court finds that Chesapeake has failed to demonstrate by a preponderance of the evidence that the parties herein are diverse; therefore, the Court **GRANTS** Plaintiffs' Motion to Remand. ECF No. 15. First, removal is timely as Chesapeake timely filed the Notice of Removal pursuant to 28 U.S.C. § 1446(b)(2)(B) on August 25, 2020. ECF No. 1.

**A. Amount in Controversy[1]**

While the amount in controversy is not challenged here, the Court finds that the $75,000.00 amount in controversy is satisfied.

---

[1] Plaintiffs did not challenge the amount in controversy prong of the analysis in their Motion to Remand. Nonetheless, the Court, mindful of the need to assess if jurisdiction exists, is satisfied this requirement is met in this matter.

28 U.S.C. § 1332. In Chesapeake's Notice of Removal, it states that Plaintiffs have submitted a paid report of Workers Compensation benefits in the amount of $79,480.78. ECF No. 1, ¶ 11. Chesapeake also points to a prior settlement demand in support of its assertion the amount in controversy is satisfied here. Chesapeake represents to the Court that prior to filing the lawsuit, Plaintiffs made a settlement demand to Defendants of $950,000.00. Id. at ¶ 13. This Court has previously found settlement discussions germane to the issue presented here. See Gillis v. Bayview Loan Servicing, LLC, No. 2:18-CV-57, 2018 WL 4183255 (N.D.W. Va. Aug. 15, 2018); see also Grinell Mut. Reinsurance Co. v. Haight, 697 F.3d 582, 585 (7th Cir. 2012) ("Although settlement negotiations are not admissible at trial pursuant to Federal Rule of Evidence 408 to prove liability for or invalidity of the claim or its amount, they can be considered 'to show the stakes' when determining whether the amount in controversy is met."). Plaintiffs may not avoid federal court via removal jurisdiction claiming the amount in controversy is unsatisfied after establishing a potential value of their claims of their own volition. Nor are courts required to ignore such clear indicators when analyzing an issue as critical as jurisdiction.

In the Complaint, Plaintiffs specifically request past medical expenses for Plaintiff Gasper's injuries, totaling $60,391.00, and future medical expenses in an amount presently

indeterminable. Compl., ECF No. 1-1, ¶ 61. Further, Plaintiffs allege the loss of past and future wages. Id. at ¶ 62. Plaintiffs request money damages to compensate for Plaintiff Gasper's past, present, and future pain and suffering, Plaintiff Foster's loss of consortium, and interest, costs, and other expenses incurred by the Plaintiffs. Id. at ¶¶ a-f. It is clear that Chesapeake showed by a preponderance of the evidence that the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332.

### B. Diversity Citizenship

The question remaining before the Court is whether Plaintiffs fraudulently joined Defendant Corder in this action to defeat complete diversity among the parties. There is no question that all parties are diverse in citizenship, except for Defendant Corder, who is a citizen and resident of Upshur County, West Virginia.[2] In essence, the issue before the Court whether Defendant Corder owed an individual duty to Plaintiffs solely on the basis of his title as Safety Manager.

Plaintiffs allege that there is legal duty on the part of Defendant Corder, an employee of Weyerhaeuser, to provide a safe workplace to Plaintiff Gasper, and that the allegations in the

---

[2] See supra, Section III.A. Plaintiffs allege Mississippi residency, Chesapeake is a resident of Maryland, Conway-Phillips is a resident of Pennsylvania, Process Combustion is a resident of Pennsylvania, Weyerhaeuser defendants are residents of the state of Washington, and Defendant Corder is a resident of Upshur County, West Virginia.

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 15]**

Complaint show that there are possibilities that the Plaintiffs can establish a cause of action against Defendant Corder, and the case should therefore be remanded to the Circuit Court of Harrison County.  Motion to Remand, ECF No. 15, p. 5.

Chesapeake alleges that Plaintiffs named Chris Corder as a defendant for the sole purpose of defeating diversity jurisdiction. Chesapeake argues that Defendant Corder was named in the Complaint solely because of his position and title as Safety Manager of the Weyerhaeuser plant, and that no affirmative act or omission of negligence, or any specific facts supporting the allegations whatsoever, has been alleged against Defendant Corder. Response in Opposition, ECF No. 18, p. 5. In fact, Chesapeake alleges that Plaintiffs fail to meet the pleading standards in their Complaint as set forth in Iqbal, Twombly, and their progeny. In the "Affidavit of Christopher Corder" submitted by Chesapeake as an exhibit to its Notice of Removal, Defendant Corder averred that he was employed by Weyerhaeuser NR as the "Safety Manager." ECF No. 1-4. He further states that he did not witness the accident involving Plaintiff Gasper because he was not present at the facility at the time the event occurred. Id. Defendant Corder goes on to testify: "[w]hen I had left [the facility] the evening before, I was not aware of any unsafe condition that existed in the working area nor had anyone reported concern over any workplace condition to any Weyerhaeuser personnel." Id.

13

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 15]**

Federal pleading standards demand more than naked assertions and labels and conclusions in the complaint. Ashcroft v. Iqbal, 556 U.S. 662 (2009). While a plaintiff is not required to make "detailed factual allegations," it must allege more than "a formulaic recitation of the elements of a cause of action." Id. at 679 (quoting Bell v. Twombly, 550 U.S. 544, 127 (2007)). A claim must be plausible on its face, which means to say that the claim must be pleaded so that the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Twombly, 550 U.S. at 556.

In order to fully address the question before the Court, the Court must examine the relevant West Virginia law governing the tort of negligence. To establish a prima facie case of negligence in West Virginia, a plaintiff must show that "the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." Syl. Pt. 1, Parsley v. General Motors Acceptance Corp., 280 S.E.2d 703 (W. Va. 1981). Duty "is measured by the scope of the risk which negligent conduct foreseeably entails." Thompson v. Quality Carriers, Inc., No. 5:14CV127, 2015 WL 1880365, *1, *4 (N.D.W. Va. Apr. 25, 2015) (internal citation omitted). In determining whether resulting harm was foreseeable, a Court must ask the following question: "[W]ould the ordinary man in the defendant's position, knowing what he knew or should have known,

14

anticipate that harm of the general nature of that suffered was likely to result?" Syl. Pt. 3, <u>Sewell v. Gregory</u>, 371 S.E.2d 82 (W. Va. 1988).

The determination of whether a defendant owes a duty to the plaintiff is a matter of law for the Court. <u>Jack v. Fritts</u>, 457 S.E.2d 431, 435 (W. Va. 1995). Chesapeake states, pursuant to West Virginia Code § 21-3-1, that a duty to provide a safe workplace lies with the employer and property owner:

> Every **employer** shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees: Provided, That as used in this section, the terms "safe" or "safety" as applied to any employment, place of employment, place of public assembly or public building, shall include, without being restricted hereby, conditions and methods of sanitation and hygiene reasonably necessary for the protection of the life, health, safety, or welfare of employees or the public.
>
> Every **employer** and every **owner** of a place of employment, place of public assembly, or a public building, now or hereafter constructed, shall so construct, repair and maintain the same as to render it reasonably safe.

W. Va. Code § 21-3-1 (emphasis added). However, as Plaintiffs point out, it is settled law that

> "[a]n employee may be held personally liable for torts against third parties. The fact that an individual is acting as an employee does not relieve that person of liability. An employee's personal liability is independent of the employment relationship, and the fact that the employer may be held liable under the doctrine

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 15]**

of *respondeat superior* does not of itself relieve the employee of liability."

30 C.J.S. Employer—Employee § 254. Further, the Supreme Court of Appeals of West Virginia in <u>Musgrove v. Hickory Inn, Inc.</u> describes the doctrine of *respondeat superior*: "An agent or employee can be held personally liable for his own torts against third parties and this personal liability is independent of his agency or employee relationship. Of course, if he is acting within the scope of his employment, then his principal or employer may also be held liable." Syl Pt. 3, <u>Musgrove v. Hickory Inn, Inc.</u>, 281 S.E.2d 499, 500 (W. Va. 1981). In essence, the doctrine of *respondeat superior* imposes liability on an employer "for the negligent acts of an employee committed while the employee was acting within the scope [of employment]." <u>Dunn v. Rockwell</u>, 689 S.E.2d 255, 274 (W. Va. 2009).

Importantly, "[e]mployees in West Virginia are not relieved of tort liability by the application of *respondeat superior,* even when acting in the scope of their employment." <u>McKean v. Wal-Mart Stores, Inc.</u>, No. 2:05-0176, 2005 WL 1785260, *1, *3 (S.D.W. Va. July 26, 2005) (citing <u>Musgrove</u>, 281 S.E.2d at 501); <u>see also State ex rel. Bumgarner v. Sims</u>, 79 S.E.2d 277, 289 (W. Va. 1953) ("In this jurisdiction a joint action of tort may be instituted against a master and servant in a case in which the plaintiff's injuries were occasioned solely by the negligence of the servant, and the

16

only ground for holding the master liable is that furnished by the doctrine of *respondeat superior*."). The United States District Court of the Southern District of West Virginia, in a determining an issue similar to the instant issue before this Court, concluded that "[i]t . . . appears that the West Virginia Supreme Court may recognize a cause of action against a management level employee charged with some responsibility for maintaining the premises." McKean, 2005 WL 1785260 at *3. The McKean Court, in granting the plaintiff's motion to remand the case to the Circuit Court of Kanawha County, answered the following question in the affirmative: "whether plaintiffs have sufficiently pled a cause of action against this particular manager, defendant Smailes." Id. The McKean Court relied on defendant Smailes's affidavit, in part, stating that it showed an affirmative duty on the part of defendant Smailes to check the operation of a bay door, which was at issue in the case. Id. In the affidavit, Smailes stated that she "inspected the bay doors, including the one in question, when and if there was a problem" and that she "was not present at the time of the accident, was not on notice of any problem with the door," and "did not maintain the door when and if there were problems." Id. The Court noted that it may be true that defendant Smailes's duties regarding the bay door are in question, but "[i]n evaluating remand motions, the court is directed to view all facts in the

light most favorable to plaintiffs, and Smailes's own affidavit shows that there exist questions of fact as to her duties." Id.

Here, to support the negligence theory, Plaintiffs pleaded paragraphs 38-52, under Count II of the Complaint, specifically against the Weyerhaeuser defendants and Defendant Corder:

> 38. Plaintiffs reallege and incorporate herein all of the allegations contained within the Complaint as if the same were reprinted herein verbatim.
> 39. The Weyerhaeuser defendants are vicariously liable for the actions and omissions of its employees, agents, and/or servants, including, but not limited to Defendant Corder, pursuant to the doctrine of *Respondent* [sic] *Superior*.
> 40. At all times relevant to this Complaint, Defendants were charged with the affirmative duty and obligated by law to provide Plaintiff Gasper with a safe place to work that complied with all state, federal, and industry established safety standards.
> 41. Defendants breached their affirmative duty and legal obligation to provide Plaintiff Gasper with a safe place to work that complied with all state, federal, and industry established safety standards, by failing to ensure that the collapsible duct tubing, cords, wires, and other debris scattered over the floor were removed prior to other workers working in the area.
> 42. In addition, Defendants breached their affirmative duty and legal obligation to provide Plaintiff Gasper with a safe place to work that complied with all state, federal, and industry established safety standards, by failing to ensure that the collapsible duct tubing, cords, wires, and other debris scattered over the floor were adequately marked and/or barricaded.
> 43. Further, Defendants breached their affirmative duty and legal obligation to provide Plaintiff Gasper with a safe place to work that complied with all state, federal and industry established safety standards, by violating federal safety laws and regulations, including, but not necessarily limited to:
> a. 29 CFR 1910.22;
> b. 29 CFR 1910.144;
> c. 29 CFR 1910.145;
> d. 29 CFR 1926.20;

    e. 29 CFR 1926.25;

    f. 29 CFR 1926.200;

    44. Furthermore, Defendants breached their affirmative duty and legal obligation to provide Plaintiff Gasper with a safe place to work that complied with all state, federal, and industry established safety standards, by failing to take proper precautions to prevent unsafe hazards including duct tubing, cords, wires, and other debris in an active work area or to otherwise maintain the areas where people were traversing in a safe manner.

    45. The acts and omissions of Defendants described in the aforementioned paragraphs herein constitute negligence.

    46. In addition to, and/or in the alternative, Defendants Weyerhaeuser as the owner and/or occupier of the premises, owed to Plaintiff the duty of providing a reasonable safe place to work, as well as the duty to exercise ordinary and reasonably care for her safety.

    47. In addition to, and/or in the alternative, on the aforesaid date, Defendants failed to provide Plaintiff Gasper with a reasonably safe place to work and negligently failed to exercise ordinary and reasonable care for her safety.

    48. In addition to, and/or in the alternative, Defendants retained supervision and control of the job that was being performed, and upon information and ballet conducted numerous supervisory visits and oversaw the performance of any type of work being done and further retained the right to modify and did modify the operations and performance of the work.

    49. In addition to, and/or in the alternative, Defendants retained supervision and control of the job site upon which Plaintiff Gasper was injured and conducted numerous supervisory visits and oversaw the performance and type of work being done and further retained the right to modify the operations and performance of the work.

    50. In addition to, and/or in the alternative, Defendants further breached their duty to Plaintiff by not complying with the safety laws of the State of West Virginia and of the United States of America, and the rules and regulations promulgated thereunder, and failed to protect Plaintiff while upon the premises which were owned, occupied and controlled by Defendant, or in its exercise of reasonable care, should have known that injury or death might result as a direct and probable

consequence of the performance of the work if reasonable care was not exercised.

51. In addition to, and/or in the alternative, Defendants knew, or in the exercise of reasonable care, should have known, that the work being performed was intrinsically dangerous, in nature, and the Defendants were under a continuing duty to exercise reasonable care to prevent dangerous practices which could result in injury or death to persons working in or about the premises under their control and supervision.

52. In addition to and/or in the alternative, Defendants by and through its agents and employees, including, but not necessarily limited to Defendant Corder, knew or had reason to know that the working conditions to which Plaintiff was subjected created a high risk for injury or death and that such conditions violated the safety laws of the State of West Virginia and the United States of America, and knowing this, said Defendants failed to take reasonable precautions to prevent and prohibit such activity.

Compl., ECF No. 1-1, ¶¶ 38-52.

Here, it is more than possible for Plaintiffs to maintain the negligence action as pleaded against Defendant Corder as the Safety Manager for the site at issue. Plaintiffs' charges against the Weyerhaeuser defendants and Defendant Corder seem to sufficiently plead joint, or joint and several, liability under the negligence theory. Compl., ECF No. 1-1, ¶¶ 38-52. Because Plaintiffs' allegations against Defendant Corder are more than bare assertions, and are each plausible on its face, Plaintiffs' Complaint surpasses the pleading standards as outlined in Twombly and Iqbal. Specifically, under Count II "Negligence" against the Weyerhaeuser defendants and Defendant Corder, Plaintiffs pleaded *respondeat superior* in Paragraph 39. Id. at ¶ 39. As West Virginia

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO REMAND [ECF NO. 15]**

case law clearly shows, the Supreme Court of Appeals of West Virginia recognizes such negligence claims against an employer and employee. Notably, the Court recognizes a cause of action against a management level employee charged with some responsibility for maintaining the premises. McKean v. Wal-Mart Stores, Inc., 2005 WL 1785260, *1, *3 (S.D.W. Va. July 26, 2005).

This stage of the litigation, not being one for resolution of any factual issues relating to Plaintiffs' case against Defendant Corder, is for the Court to determine whether Plaintiffs' claim has some possibility of success. Even taking all of Defendant Corder's statements contained in the affidavit as true, there is no statement that bars the possibility that Defendant Corder, who apparently undertook some responsibility with regard to unsafe conditions existing in the working area in averring that he "was not aware of any unsafe condition that existed in the working area", "knew or had reason to know that the working conditions to which Plaintiff was subjected created a high risk for injury" as alleged in Plaintiffs' Complaint. ECF No. 1-4; Compl., ECF No. 1-1, ¶ 52. Defendant Corder, if even to a minute degree, contemplates knowing or having an awareness of unsafe conditions in the working area as Safety Manager for the work site.

While the duty lies with the employer and property owner to provide for a reasonably safe workplace pursuant to West Virginia Code § 21-3-1, the Court finds Plaintiffs have pleaded a plausible

claim against Defendant Corder under their negligence theory. Notably, West Virginia case law shows that claims against a company and its employees can go hand in hand: "[w]here, in an action for personal injuries, plaintiff seeks to recover damages against a master and his employee, liability of the master is not predicated solely upon the employee's negligence, but upon the negligence of another employee, or that of the employer himself, a verdict against the employer and exonerating the employee is not inconsistent." Syl. Pt. 4, Humphrey v. Virginian Ry. Co., 54 S.E.2d 204 (W. Va. 1948).

The Court is mindful of the West Virginia Legislature limiting an employee's liability in certain situations, such as the immunity granted to employees under the Workers' Compensation statute. See W. Va. Code § 23-2-6a. However, this Court is unaware of a statute in the West Virginia Code which limits the liability of a supervisory employee's negligence in this setting. Because there is no provision of West Virginia law limiting the liability of an employee such as Defendant Corder, and the negligence claims alleged against him are plausible and show a possibility of success, Chesapeake has failed to show fraudulent joinder of Defendant Corder. For all the reasons stated herein, there remains a "glimmer of hope" that Plaintiffs will succeed against Defendant Corder; therefore, complete diversity is not present here and

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO REMAND [ECF NO. 15]**

remand is required. <u>See</u> <u>Mayes v. Rapoport</u>, 198 F.3d 457, 466 (4th Cir. 1999).

**V.    <u>CONCLUSION</u>**

For the reasons discussed above, the Motion to Remand is **GRANTED** [ECF No. 15].  This action is hereby **REMANDED** to the Circuit Court of Harrison County, West Virginia.

It is so **ORDERED.**

The Clerk of this Court is directed to transmit copes of this Order to all counsel of record and the Circuit Clerk of Harrison County.

**DATED:** April 28, 2021

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
United States District Judge
